UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DERRILYN NEEDHAM,

                              Plaintiff,

            - against -

UNITED STATES OF AMERICA,

                              Defendant.

**OPINION AND ORDER**

17 Civ. 05944 (ER)

Ramos, D.J.:

        Derrilyn Needham ("Needham") sues the United States of America ("United States")
under the Federal Tort Claims Act. Specifically, Needham requests damages for the emotional
harm inflicted when Correction Officer Rudell L. Clark Mullings ("Officer Mullings") raped her.
The United States now moves to dismiss the negligent screening, hiring, and training claims in
Needham's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The
United States also claims that Needham's Eighth Amendment claim is barred by sovereign
immunity. For the reasons set forth below, the United States' 12(b)(1) motion is GRANTED.

## I.      BACKGROUND

### A.      Factual Background

        While she was serving a prison sentence at Metropolitan Correctional Center ("MCC") in
New York City in the summer of 2014, Needham was summoned to her unit's control room by
Officer Mullings. Compl. ¶ 10, 12, Doc. 1. When she reached the control room, Officer
Mullings asked her to enter but she declined, stating that she preferred to stay in her unit. *Id.* at ¶
12. Officer Mullings then proceeded to question Needham regarding "her family and life, and
how long a sentence she was serving." *Id.* He told her she was someone he would like to know

"on the outside," asked whether she missed having sex while she was in jail and proceeded to make an explicit sexual advance toward her.  *Id.*  Needham became uncomfortable and left the area.  *Id.* at ¶ 13.  After that episode, Officer Mullings continued to make "uninvited contact and initiat[ed] unwelcome verbal interactions."  *Id.* at ¶ 14.  Needham alleges that Officer Mullings enlisted another correctional officer, Officer Fletcher, to act as a liaison between himself and Needham.  *Id.* at ¶ 15.  Officer Fletcher told Needham that Officer Mullings referred to her as his girlfriend.  *Id.*  Needham alleges upon information and belief that Officer Mullings was trying to "groom" Needham into having a sexual relationship with him by, among other things, enlisting Officer Fletcher to deliver food to her from outside the facility.  *Id.* at ¶ 16.  Needham alleges that although Officer Fletcher was aware of Officer Mullings' sexual intentions toward her, Fletcher did not report the conduct or make any effort to halt it.  *Id.* at 17–18.

In December 2014, Needham told the supervisor at her prison work assignment, Officer Collier, that Mullings was making unwanted personal advances toward her, to which he responded, "stay away from him" and that Officer Mullings and those with whom he associated were dangerous.  *Id.* at ¶ 19.  Needham alleges that Officer Collier did nothing in response to her complaint.  *Id.*  In fact, he recommended that she not tell anyone about the conduct.  *Id.*

On February 14, 2015, Needham and two other inmates were waxing the floor of MCC while a correction officer supervised them.  *Id.* at ¶ 20.  The officer left to watch a televised sporting event and delegated the supervision of Needham and the other two inmates to Officer Mullings.  *Id.*  The other inmates eventually left and Officer Mullings approached Needham from behind, "grabbed her, forcibly removed her pants and underwear" and raped her as she fought back.[1]  *Id.* at ¶ 21.  Shortly thereafter, Needham reported the rape to law enforcement officers,

---

[1] This incident lasted "a few minutes."  Underlying Facts, Compl. ¶ 21, Doc. 1.

her son, and another inmate. *Id.* at ¶ 23. On February 19, 2015, Needham saw Officer Mullings as she worked in the commissary where he stared at her "in an intimidating manner causing her to become very frightened and upset." *Id.* at ¶ 24.

### B. Procedural History

On November, 23, 2015, Mullings was prosecuted for the offense in the Eastern District of New York; he pled guilty, and was sentenced to 84 months imprisonment by Judge Korman on May 4, 2016. *See USA v. Mullings*, 15-cr-00538 (ERK) Docs. 2, 23, 24; *see also* Pl.'s Mem. Opp'n at 1, n.1, Doc. 28. . On August 7, 2017, the instant Federal Tort Claims Act action was filed, alleging that the United States of America negligently screened, hired, trained, and supervised Officer Mullings and other correctional officers "who failed to properly act on information they possessed and to investigate, report, and/or stop Mullings from inappropriate personal contact, grooming, gift-giving, and eventual rape of the plaintiff." Compl. ¶ 27. The United States now moves to dismiss Needham's negligent screening, hiring, and training claims pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure claiming sovereign immunity.[2] Preliminary Statement, Def.'s Mem. at 1, Doc. 23. The United States separately claims that Needham's Eighth Amendment claim is barred by sovereign immunity. *Id.*

## II. LEGAL STANDARD

### A. Standard of Review

The United States' motion to dismiss relies on both Rules 12(b)(1) and 12(b)(6). "Courts are required to decide 'the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits, and therefore, an exercise of jurisdiction.'" *Spruill v. NYC*

---

[2] The Government is not moving to dismiss the negligent supervision claim.

*Health & Hosp.*, 2007 U.S. Dist. LEXIS 63093, at *2 (S.D.N.Y. Aug. 23, 2007), *aff'd sub nom.*

*Spruill v. New York City Health & Hospitals Corp.*, 367 F. App'x 269 (2d Cir. 2010) (quoting

*Magee v. Nassau County Med. Ctr.*, 27 F. Supp. 2d 154, 158 (E.D.N.Y. 1998)); *id.* (citing *Rhulen*

*Agency, Inc. v. Alabama Ins. Guar. Ass'n.*, 896 F.2d 674, 678 (2d Cir. 1990)).

### B.    Motion to Dismiss Under Rule 12(b)(1)

"'Determining the existence of subject matter jurisdiction is a threshold inquiry and a

claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the

district court lacks the statutory or constitutional power to adjudicate it.'"  *Morrison v. Nat'l*

*Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted).  "When considering a

motion to dismiss for lack of subject[-]matter jurisdiction . . . , a court must accept as true all

material factual allegations in the complaint."  *Shipping Fin. Servs. Corp. v. Drakos,* 140 F.3d

129, 131 (2d Cir. 1998).  Nevertheless, "[t]he burden of proving jurisdiction is on the party

asserting it."  *Malik v. Meissner,* 82 F.3d 560, 562 (2d Cir. 1996) (internal quotation marks

omitted).

In other words, "when the question to be considered is one involving the jurisdiction of a

federal court, jurisdiction must be shown affirmatively, and that showing is not made by drawing

from the pleadings inferences favorable to the party asserting it."  *Drakos,* 140 F.3d at 131.

Accordingly, a court may consider affidavits and other material beyond the pleadings to resolve

jurisdictional questions under Rule 12(b)(1).  *See Robinson v. Gov't of Malaysia,* 269 F.3d 133,

140 n.6 (2d Cir. 2001).

### C.    Federal Tort Claims Act

"[T]he United States, as sovereign, is immune from suit save as it consents to be sued . . .

, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain

the suit."  *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States v.*

*Sherwood*, 312 U.S. 584, 586 (1941)). "The doctrine of sovereign immunity is jurisdictional in nature, and therefore to prevail, the plaintiff bears the burden of establishing that her claims fall within an applicable waiver." *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000) (citation omitted). As established by the Federal Tort Claims Act ("FTCA"), the United States consents to suit, and thus waives its sovereign immunity, in actions for money damages for injuries "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment . . . ." 28 U.S.C. § 1346(b)(1); *see also Fountain v. Karim*, 838 F.3d 129, 131 (2d Cir. 2016). There is, however, an exception to that waiver known as the discretionary function exception ("DFE"). The DFE shields the government from liability for claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).

The Supreme Court has instructed that district courts not focus "on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." *United States v. Gaubert*, 499 U.S. 315, 324–25 (1991). More specifically, a claim falls within the discretionary function exception "if two conditions are met." *Molchatsky v. United States*, 713 F.3d 159, 162 (2d Cir. 2013) (per curiam). First, the challenged government conduct must be "discretionary in nature," *Gaubert*, 499 U.S. at 322, meaning that the acts in question "involve an 'element of judgment or choice' and are not compelled by statute or regulation," *Molchatsky*, 713 F.3d at 162 (quoting *Gaubert*, 499 U.S. at 322–23). The DFE "bars claims based on day-to-day management decisions if those decisions require judgment as to which of a range of permissible courses is

wisest." *Fazi v. United States*, 935 F.2d 535, 538 (2d Cir. 1991). Thus, to fall within the DFE, an act must *not* be "compelled by statute or regulation," because acts in violation of rules and regulations are, by definition, not discretionary and therefore are afforded "no shelter from liability." *Coulthurst v. United States*, 214 F.3d 106, 109 (2d Cir. 2000); *Gaubert*, 499 U.S. at 324.

Second, to fall within the DFE, the judgment exercised must be "'of the kind that the discretionary function exception was designed to shield,'" *Gaubert*, 499 U.S. at 322–23 (quoting *Berkovitz v. United States*, 486 U.S. 531, 536 (1988))—that is, "grounded in 'considerations of public policy' or susceptible to policy analysis," *Molchatsky*, 713 F.3d at 162 (quoting *Gaubert*, 499 U.S. at 322). The DFE's purpose is to prevent "judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Gaubert*, 499 U.S. at 323 (internal quotation marks and citations omitted).

Accordingly, certain acts, although discretionary, do not fall within the DFE because they "involve 'negligence unrelated to any plausible policy objective.'" *Riascos-Hurtado v. United States*, No. 09 CV 003 (RJD) (VMS), 2015 U.S. Dist. LEXIS 73821, at *14 (E.D.N.Y. June 5, 2015) (quoting *Coulthurst*, 214 F.3d at 111); *see Coulthurst*, 214 F.3d at 111 (2d Cir. 2000) (noting that "[a]n inspector's decision (motivated simply by laziness) to take a smoke break rather than inspect the machines, or an absent-minded or lazy failure to notify the appropriate authorities upon noticing the damaged cable, are examples of negligence fairly encompassed by the allegations of the complaint that do not involve 'considerations of public policy'" (quoting *Gaubert*, 499 U.S. at 323)); *Indian Towing Co. v. United States*, 350 U.S. 61, 68–69 (1955) (careless maintenance of a lighthouse not exemption from liability); *Andrulonis v. United States*, 952 F.2d 652, 655 (2d Cir. 1991) (careless failure of government scientist to maintain proper

safety procedures and warn others of potential dangers not immune); *Caraballo v. United States*, 830 F.2d 19, 22 (2d Cir. 1987) (negligent patrol of a beach vulnerable to suit).

If an act is not compelled by any statute or regulation, but rather such statute or regulation permits employee discretion, "the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulation" and "it must be presumed that the agent's acts are grounded in policy when the agent exercises that discretion." *Gaubert*, 499 U.S. at 324.

## III.    DISCUSSION

In seeking dismissal, the Government points to Supreme Court and Second Circuit precedent which states generally that the Government's screening, hiring, and training of employees fall within the DFE and are thus barred. Def.'s Mem. at 4–7. In response, relying primarily on 18 USC § 4042(a), Ninth Circuit precedent, and case law from the Eastern District of New York, Needham argues that she has sufficiently plead that the Government's conduct does not fall within the DFE and that her claims should stand. Pl.'s Mem. Opp'n at 4–7. Because Needham does not satisfy either prong of the *Gaubert* test, her claims must be dismissed. *See* 499 U.S. 322–323.

The Court finds persuasive the authority relied upon by the Government that actions such as screening, hiring, and training are generally discretionary in nature. *See, e.g.*, *Hekmat v. U.S. Transp. Sec. Admin.*, 247 F. Supp. 3d 427, 437–38 (S.D.N.Y. 2017) (holding that the TSA's hiring procedures are discretionary and "clearly involve matters of public policy"); *Cuoco v. United States Bureau of Prisons*, 2003 U.S. Dist. LEXIS 16615, at *19–20 (S.D.N.Y. Sep. 22, 2003) (holding that "challenges to the personnel decisions of the United States are barred by the

discretionary function exception to the FTCA"); *Riascos-Hurtado*, 2015 U.S. Dist. LEXIS 73821, at *18 (concluding that "plaintiffs' allegations of negligent screening, hiring, and training cannot survive the discretionary function inquiry"); *Saint-Guillen v. United States*, 657 F. Supp. 2d 376, 387 (E.D.N.Y. 2009) (holding that where a complaint does not allege any misconduct regarding defendant's hiring, retention, and training practices, such practices are discretionary). Moreover, as the Government correctly points out, Needham fails to adequately allege that the specific personnel decisions at issue here were "compelled by statute or regulation." *Coulthurst*, 214 F.3d at 109.

In arguing otherwise, Needham relies on 18 USC § 4042(a), which states in relevant part that the Bureau of Prisons shall "provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States." Needham states that the language of this statute "is broad enough to impose a duty on the Government to determine the basic fitness of an applicant to become a correctional officer." Pl.'s Mem. Opp'n at 4. But the breadth and generality of the statute undercuts her claim: the DFE applies when statutes broadly outline the agency's responsibilities but do not compel specific action. The statute in question requires BOP discretion to "provide for the safekeeping, care and subsistence" of prisoners, but it does not dictate how the BOP should achieve those goals or how it should screen, hire, or train its staff. 18 USC § 4042(a). *See Paulino-Duarte v. United States*, 2003 U.S. Dist. LEXIS 20000, at *5 (S.D.N.Y. Nov. 6, 2003) (holding that 18 USC § 4042(a) does not compel the BOP's action because it "merely outlines the general responsibilities of the BOP and leaves the BOP with 'judgment or choice' in determining the proper course to fulfill these objectives."). *Compare Paulino-Duarte*, 2003 U.S. Dist. LEXIS 20000, at *5, *with USAA Cas. Ins. Co. v. Permanent Mission of the Republic of Namib.*, 681 F.3d

103, 109 (2d Cir. 2012) (holding that a statute that "imposes upon the 'person causing . . . construction' within a building the duty to '[m]aintain the structural integrity of [party walls],' and to 'take all necessary steps to protect such wall[s]'" compelled action and was not discretionary) (alterations in original), *and Ben v. United States*, 160 F. Supp. 3d 460, 467, 474 (N.D.N.Y. 2016) (holding policies that required probation officers to "develop a written supervision case plan . . . ; inspect electronic monitoring equipment at least once per month; conduct daily review of electronic monitoring activity reports . . . ; receive immediate notification of electronic monitoring tamper alerts; conduct immediate investigation of tamper alerts; and provide a report to the court concerning any violation of the court-imposed conditions" compelled specific actions and were thus non-discretionary). Thus, because the relevant acts in the instant case involved an element of judgment, and because there is no statutorily compelled course of action for the acts complained of, the DFE applies.

Nor does Needham set forth allegations sufficient to demonstrate that the decisions were not grounded in policy considerations. As an initial matter, Needham states that the BOP failed to properly act on the information she provided and to investigate, and stop Mullings from inappropriate personal contact, and "eventual rape of the plaintiff." Compl. ¶ 27. Those allegations, however, are not relevant to the process that the United States undertook in hiring, screening, and training the correctional personnel in question. Nor has Needham alleged that the personnel decisions here involved "negligence unrelated to any plausible policy objectives." *Coulthurst*, 214 F.3d at 111. And even if she did, such claims are likely to fail. *See Saint-Guillen*, 657 F. Supp. 2d at 387 (stating "federal courts have found that such hiring, [and] training . . . decisions generally fall within the exception" because '[t]he hiring decisions of a public entity require consideration of numerous factors, including budgetary constraints, public

perception, economic conditions, individual backgrounds, office diversity, experience and employer intuition.'" (quoting *Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1217 (D.C. Cir. 1997))); *see also Riascos-Hurtado*, 2015 U.S. Dist. LEXIS 73821, at *18 (holding that screening, hiring, and training "require a balancing of competing objectives, and are of the nature and quality that Congress intended to shield from tort liability."). Needham therefore offers no allegations to overcome the presumption that these decisions were grounded in policy considerations. *See Gaubert*, 499 U.S. at 324 (noting that where a statute or regulation permits employee discretion, "the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulation" and "it must be presumed that the agent's acts are grounded in policy when the agent exercises that discretion"); *see also Cheng Yong Wang v. United States*, 61 F. App'x 757, 759 (2d Cir. 2003) (holding that discretionary conduct that is based on considerations of public policy "is bulletproof from liability under the [DFE].").

Needham offers two bases to distinguish her case from the prevailing case law that holds that personnel decisions are shielded from liability by the DFE. Pl.'s Mem. Opp'n at 4–7. Neither is persuasive.

First, Needham emphasizes that she alleged negligent screening, hiring, and training of the correction officers but that she "has no way to know more" about the circumstances. Pl.'s Mem. Opp'n at 6. Indeed, the court in *Riascos-Hurtado* dismissed the plaintiff's screening, hiring, and training claims precisely because the plaintiffs did "not deduce[] any evidence suggesting that the BOP's hiring of [the subject officer] strayed from . . . normal considerations." 2015 U.S. Dist. LEXIS 73821, at *16–19. So too here, as Needham fails to provide any

evidence about the negligence involved with the decisions surrounding the retention of the subject correctional officers.

Second, Needham relies on *Knappick v. United States*, No. 88-2462, 1989 U.S. App. LEXIS 24692, at *1 (9th Cir. May 18, 1989). *Knappick*, however, was implicitly overruled by the Ninth Circuit in *Nurse v. United States*, which held that negligent "employment, supervision and training" decisions "fall squarely within the discretionary function exception." 226 F.3d 996, 1001 (9th Cir. 2000). For the reasons set forth above, Plaintiff fails to demonstrate that the Government's actions are not protected by the DFE.[3]

## IV.    CONCLUSION

For the reasons set forth above, the United States' motion to dismiss is GRANTED as to Needham's negligent screening, hiring, and training claims. As the Government has not moved to dismiss Needham's negligent supervision claim, that claims survives. That parties are directed to appear for an Initial Pretrial Conference on August 16, 2018 at 11:45 am. The Clerk of the Court is respectfully directed to terminate the motion, Doc. 22.

It is SO ORDERED.


Dated: July 26, 2018
       New York, New York


                                                    _____
                                                    Edgardo Ramos, U.S.D.J

---

[3] In her opposition papers, Needham waives her Eighth Amendment claim and, thus, the court need not address it. Pl.'s Opp. 2, n. 2. Further, having found that the Government is entitled to sovereign immunity on Needham's negligent screening, hiring, and training claims, the Court also does not address the argument that dismissal is separately warranted under Federal Rule of Civil Procedure 12(b)(6). The Court is without jurisdiction to do otherwise. *United States v. Mitchell*, 445 U.S. 535, 538 (1980) ("It is elementary that 'the United States, as sovereign, is immune from suit save as it consents to be sued . . . , and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'"(quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941))).